IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| IRIS SANCHEZ, *individually, and as successor in interest to Pekelo Sanchez, deceased*, <br><br> Plaintiff, <br><br> v. <br><br> CITY AND COUNTY OF HONOLULU, *et al.*, <br><br> Defendants. | Case No. 19-cv-00072-DKW-WRP <br><br> **ORDER GRANTING IN PART AND DENYING AS MOOT IN PART DEFENDANTS' MOTION TO DISMISS** |

Defendants move for dismissal of Claims Three and Five of the First

Amended Complaint (FAC), the individual defendants in their official capacities,

and the request for punitive damages against the City and County of Honolulu

(City).   For the reasons discussed below, the Court agrees that Claim Five must

be   dismissed because the FAC does not plausibly allege a link between any

custom or policy of the City and the incident at issue in this case.   The Court also

agrees that the individual defendants in their official capacities must be dismissed

because the City is the proper defendant for those claims.   As for other matters

raised by the motion to dismiss, Plaintiff has clarified the scope and limits of her

claims and related relief, rendering the motion to dismiss moot as to those matters,

as described further below.   Finally, leave to amend the claims dismissed herein is denied.   That too is explained below.

## BACKGROUND

### I.    The Alleged Incident

The FAC alleges that the following events took place on the morning of February 11, 2017.   Pekelo Sanchez (Sanchez) and Chayla Belford (Belford) were sleeping in a parked 2002 Blue Dodge Ram (Truck).   FAC at ¶ 15, Dkt. No. 32. At some point, Officers Jonathan Frye, Dylan Shatto, Marvin Parengit, and Barbara Delaforce (collectively, "the Officer Defendants") were called to the scene because the Truck was parked in the wrong parking stall, and the owner of the stall wanted the Truck moved.   *Id*. at ¶16.   Without identifying or explaining themselves, the Officer Defendants banged on the windows of the Truck and demanded Sanchez and Belford get out.   *Id*. at ¶ 18.   Startled by the commotion and uncertain as to what was happening, Sanchez and Belford discussed rolling down the windows of the Truck.   *Id*. at ¶ 19.   As soon as Sanchez reached for the keys to do so, the Officer Defendants shot him.   *Id*. at ¶ 20.   After being shot, Sanchez was able to start the Truck, but was shot a second time.   *Id*. at ¶ 22. Evidently, Sanchez died from the injuries inflicted by the Officer Defendants. *See id*. at ¶ 39.

## II.   **The FAC**

Five claims are asserted in the FAC.   These claims are brought against the Officer Defendants, in both their official and individual capacities, and/or the City. In Claim One, the FAC alleges that Sanchez was detained without reasonable suspicion and arrested without probable cause in violation of the Fourth Amendment.   In Claim Two, the FAC alleges that the Officer Defendants' use of deadly force was excessive and unreasonable in violation of the Fourth Amendment.   In Claim Three, the FAC alleges that the death of Sanchez caused him to experience severe pain and suffering and caused Plaintiff to lose her familial relationship with Sanchez, in violation of due process under the Fourteenth Amendment.   In Claim Four, the FAC alleges that Sanchez's death caused Plaintiff to lose her familial relationship with him, as well as suffer expenses and a loss of financial support in violation of due process under the Fourteenth Amendment.   In Claim Five, the FAC alleges that the City enacted, sanctioned, or tolerated a large number of policies, practices, or customs that were the "moving force" behind Sanchez's death in violation of the Fourth and Fourteenth Amendments.

## III. <u>The Motion to Dismiss</u>

The motion to dismiss seeks dismissal of various parts of the FAC, pursuant to Federal Rule of Civil Procedure 12(b)(6). First, Defendants seek dismissal of Claim Five, arguing that the FAC fails to plead a plausible custom, policy, or practice that was the moving force behind any alleged constitutional violations. Second, Defendants seek dismissal of Claim Three, arguing that it is duplicative of another claim raised in the FAC. Third, Defendants seek dismissal of any claim for punitive damages against the City, arguing that such damages are not permitted under Hawai'i law. Fourth, Defendants seek dismissal of the Officer Defendants in their official capacities, arguing that they are "redundant" given that the City is named as a defendant.

In opposition to the motion to dismiss, Plaintiff first responds that Claim Five has been properly pled, arguing that the FAC identifies an express policy, a custom or practice, and a decision of a person with final policymaking authority, all giving rise to liability. Second, Plaintiff argues that Claim Three should not be dismissed because it is asserted on behalf of Plaintiff individually and, to the extent the FAC states otherwise, it was "inadvertent[.]" Third, Plaintiff argues that punitive damages have been properly sought because such damages are sought only against the Officer Defendants in their individual capacities, rather than the

City.   Fourth, Plaintiff argues that the Officer Defendants should not be dismissed in their official capacities because the relevant claims are not brought against the City.

After a reply in support of the motion to dismiss was filed, Dkt. No. 41, the Court elected to decide the motion without a hearing, Dkt. No. 43.   This Order now follows.

### STANDARD OF REVIEW

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."   Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed.R.Civ.P. 8(a)(2).   Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*   Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id.* (citing *Twombly*, 550 U.S. at 555).   Rather, "[a] claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id*. (citing *Twombly*, 550 U.S. at 556).   Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2).   *Id*. at 679.

When a complaint fails to state a plausible claim, leave to amend should be given when "justice so requires."   Fed.R.Civ.P. 15(a)(2).   Justice does not require leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there has been repeated failure to cure a deficiency.   *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

## DISCUSSION

The Court addresses each of Defendants' arguments in turn.

## I.   Claim Five

In Claim Five, Plaintiff asserts a claim against the City for alleged customs, policies, or practices that were the moving force behind constitutional violations she and Sanchez allegedly suffered.   As the parties indicate in their briefing, this

claim is premised upon *Monell v. Dep't of Soc. Services of the City of New York*,

436 U.S. 658 (1978).

In *Monell*, the U.S. Supreme Court held that a municipality, such as the City,

could be "sued directly under [42 U.S.C.] § 1983 for monetary, declaratory, or

injunctive relief where, as here, the action that is alleged to be unconstitutional

implements or executes a policy statement, ordinance, regulation, or decision

officially adopted and promulgated by that body's officers" or is "visited pursuant

to governmental 'custom' even though such a custom has not received formal

approval through the body's official decisionmaking channels."   *Id.* at 690-691.

In addition, the Supreme Court has held that a municipality can be liable under

Section 1983 for a "failure to train" when "the failure to train amounts to deliberate

indifference to the rights of persons with whom the police come into contact."

*City of Canton v, Harris*, 489 U.S. 378, 388 (1989).   However, a municipality

cannot be held liable under Section 1983 "*solely* because it employs a tortfeasor–

or, in other words, a municipality cannot be held liable under § 1983 on a

*respondeat superior* theory."   *Monell*, 436 U.S. at 691 (emphasis in original).

As a result, a plaintiff can allege municipal liability under Section 1983 in

one of three ways.   First, a municipality can be liable when it or a person with

final policymaking authority within the municipality expressly enacts or authorizes

a policy respecting a challenged action.   *Id*. at 690; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-483 (1986) ("The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.").   Second, a municipality can be liable for a custom that, although not expressly enacted, is "so permanent and well settled" it operates with the force of law.   *Monell*, 436 U.S. at 691 (quotation omitted). Third, a municipality can be liable for a failure to train its employees when such failure amounts to deliberate indifference towards the rights of its inhabitants. *City of Canton*, 489 U.S. at 388.   In addition, a plaintiff must allege that a policy, custom, or failure to train actually caused a municipality's employee(s) to commit the constitutional deprivation.   *Id*. at 391; *Monell*, 436 U.S. at 694.

With that guidance in mind, the Court agrees with Defendants that Claim Five must be dismissed.   The reason is straightforward, albeit needlessly elongated due to the nature of the FAC's allegations, in that not one of the purported policies, customs, or failures to train is anything other than a conclusory assertion unattached to the alleged constitutional deprivations in this case. Accurately summarized, the policies, customs, and failures alleged in the FAC constitute, except in a few instances, nothing more than a conclusory laundry list of

purported deficiencies that could be (and may have been) asserted against any municipality in the country.[1]

One policy specific to Honolulu is the FAC's allegation that Policy 1.04 of the Honolulu Police Department, which relates to the "Use of Force[,]" is unconstitutional.   The FAC alleges that Policy 1.04 allows a police officer to "speculate[]" when the use of deadly force is necessary.   FAC at ¶ 64(a).   The FAC, though, provides no factual allegations, other than argumentative gloss, to support this assertion.   Moreover, the language quoted in the FAC from Policy 1.04 does not state that an officer can speculate about when to use deadly force. Therefore, nothing alleged in the FAC plausibly suggests that Policy 1.04 is unconstitutional.[2]   Further, leave to amend this claim, to the extent it relies on

---

[1] The Court says "may have been" because, in counsel's apparent haste to provide a long list of alleged policies, counsel forgot to omit, on at least three occasions, the "Torrance PD" or "TPD" from the allegations.   *See* FAC at ¶¶ 64(f), (k), (l).   Evidently, counsel cut and pasted the allegations here from some other Section 1983 complaint filed in California.

[2] The Court adds that the language quoted in the FAC from Policy 1.04 is highly misleading.   In more complete form, Policy 1.04 provides, with respect to deadly force, that: "Deadly force may be used only when an officer reasonably believes that the use of such force is necessary to defend his or her own life or that of another person in immediate danger of death or serious bodily injury."   *See* Honolulu Police Department, Policy Law Enforcement Role, Responsibilities, and Relationships, Policy No. 1.04 Use of Force, 17 (April 24, 2015), http://www.honolulupd.org/information/pdfs/UseofForce-08-13-2019-10-02-07.pdf.   The policy further provides that "the use of deadly force is a seizure subject to the 'reasonableness' requirement of the Fourth Amendment."   *Id.*   Finally, the policy provides that: "Constitutional justification for the use of force is evaluated on the concept of 'reasonableness.' Police officers are restricted to the use of force that is 'objectively reasonable' in light of the facts and circumstances as the officer perceived them to be at the time of the incident."   *Id.* at 2; *see also United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003) (stating that a court may consider,

Policy 1.04, would not be appropriate because no amendment could cure the deficiencies highlighted above.   As a result, Claim Five is dismissed, and the motion to dismiss granted in this regard.

Apart from Policy 1.04, the FAC arguably alleges a *Monell* claim premised upon the decision of a final policymaker.   More specifically, the FAC alleges that the Chief of Police was the final policymaker with respect to whether "additional actions" are necessary regarding an employee's conduct.   *Id*. at ¶ 77.   The FAC further alleges that the Chief of Police reviewed video camera footage of the incident and was aware that the Officer Defendants did not know Sanchez's criminal history prior to shooting him.   *Id*. at ¶ 78.   The FAC further alleges that a deputy prosecutor of the City chose not to bring any charges against the Officer Defendants.   *Id*. at ¶ 79.   As alleged, any "final policymaker" claim is deficient, not the least because, although the FAC alleges that the Chief of Police was the final policymaker, the only decision alleged was one made by the deputy prosecutor–*i.e*., the decision not to bring charges.

In addition, leave to amend a "final policymaker" claim would be futile. First, neither the Chief of Police nor the deputy prosecutor *caused* the alleged constitutional injuries in this case.   *See Christie v. Iopa*, 176 F.3d 1231, 1235 (9th

---

*inter alia*, documents incorporated by reference in the complaint, without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment).

Cir. 1999) ("[A] municipality can be liable for an isolated constitutional violation when the person causing the violation has final policymaking authority.") (quotation omitted).   Second, to the extent they might be able to, neither the Chief of Police nor the deputy prosecutor delegated final policymaking authority to the Officer Defendants.   *Cf. id*. at 1237 (explaining that the Ninth Circuit has "refused to hold that the Los Angeles chief of police had delegated final policymaking authority to rank-and-file police officers[,]" and further explaining that, in Honolulu, the county prosecutor, not a deputy prosecutor, creates general policies for when to charge a defendant).   Third, to the extent they might be able to, neither the Chief of Police nor the deputy prosecutor, ratified the Officer Defendants' conduct.   *See id*. at 1239 ("To show ratification, a plaintiff must prove that the authorized policymakers approve a subordinate's decision and the basis for it.").   Merely refusing to bring charges against the Officer Defendants does not mean that their conduct has been ratified.   *See id*. ("[I]t is well-settled that a policymaker's mere refusal to overrule a subordinate's completed acts does not constitute approval.").[34]   As a result, the motion to dismiss Claim Five is

---

[3]In fact, as to the Chief of Police, other than reviewing video camera footage, there is no allegation that the Chief took *any* action with respect to the alleged incident in this case.   *See* FAC at ¶¶ 78-79.

[4]As for the allegation that the Chief of Police and the deputy prosecutor "conspired to ignore key evidence[,]" FAC at ¶ 80, this is a conclusory assertion, devoid of any factual enhancement

granted with respect to any *Monell* claim premised upon a decision of a final policymaker.

The FAC also alleges a long list of customs and failures to train as being actionable.   None of them, however, are factually and/or legally sufficient.   For example, the FAC alleges that the City failed to train its officers in how to handle situations involving a perceived threat, FAC at ¶ 64(b), without any allegation as to *how* the City failed to properly train its officers or how that failure led to Sanchez's death, *see City of Canton*, 489 U.S. at 391 (explaining that, "for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury.").   In fact, the FAC does not even allege why the City's training program was not "proper[.]"   It merely baldly asserts that it was, which is an assertion that could be baldly made about any training program.

Next, the FAC alleges that the City was aware of "similar allegations" of wrongful conduct, including conduct by the Officer Defendants.   FAC at ¶ 64(c).   Although that paragraph of the FAC does not illuminate the purported "similar allegations," later in the FAC, three incidents are provided as exemplars.   *See id.* at ¶ 70.   None of them, however, are "similar" to the event alleged in this case.   The first allegedly involves officers pepper spraying a person a dozen times while

_____

relevant to the alleged incident.   Therefore, the Court need not consider it.   *See Iqbal*, 556 U.S. at 678.

he was walking in Honolulu and shooting him with a Taser gun up to three times. *Id*. at ¶ 70(a).   This case, by contrast, does not involve pepper spray, tasering, or a person walking.   Moreover, no allegation is made that the force used in the example was excessive.   The second allegedly involves a state judge dismissing a criminal case because police withheld testimony and cell phone videos of an arrest. *Id*. at ¶ 70(b).   This case is not remotely similar.   The third allegedly involves a police officer punching a person in the face and throwing the person to the ground, with charges being brought against the officer.   *Id*. at ¶ 70(c).   This case does not involve a person being punched in the face and thrown to the ground.   Moreover, no allegation is made that the force used in the example was excessive.   In addition, contrary to the assertion in paragraph 64(c) of the FAC, none of the three incidents involve any of the Officer Defendants.

The FAC also alleges that "[m]edia reports" reflect a "significant increase" in "shooting and excessive force incidents."   *Id*. at ¶ 65.   More specifically, the FAC alleges that three individuals were shot by police officers in 2016, 11 were shot in 2017, six were shot in 2018, and there were two "officer-involved shootings" on one day in February 2019.   To the extent this snapshot could be considered somehow relevant, simply taken numerically, it does not reflect a "significant increase" in shooting incidents.   In fact, it does not reflect an increase

13

at all.   Moreover, there are no allegations that *any* of the "officer-involved shootings" included the use of excessive force.

The FAC further alleges a number of omissions by the City, such as the refusal to "adequately" discipline officers, the refusal to "competently and impartially" investigate allegations of misconduct, and the failure to adequately supervise officers.   *Id.* at ¶¶ 64(d), (e), (i).   Putting aside that there are no allegations as to why the City's discipline, investigations, or supervision were not adequate, competent, or impartial, there are no allegations, plausible or otherwise, that these purported customs were "so permanent and well settled" to constitute the force of law.   *See Monell*, 436 U.S. at 691.   Rather, like other allegations already mentioned, they are bald assertions that could be asserted against any municipality. The same is true of the allegations that the City fired employees who reported acts of misconduct and covered up the same.   *See* FAC at ¶¶ 64(f), (g).[5]

Next, the FAC alleges a number of failures to train, including training officers in how to contact civilians, how not to racially profile individuals, making

---

[5]With respect to "cover-up[s]," the FAC alleges that the Honolulu Police Department policy manual requires use-of-force incidents to be reported to the Chief of Police and the Department of the Prosecuting Attorney, which "enables the City to begin the cover-up of misconduct at its inception."   FAC at ¶ 64(h).   Apart from the fact that this allegation seems to suggest that police officers should *conceal* their uses of force, Plaintiff cites no law suggesting that requiring an officer to report a use of force to his or her superiors constitutes an unconstitutional policy. Moreover, there are no allegations that the requirement to report uses of force, or covering up the same, caused Sanchez's death.

traffic stops, and using force such as "arm hold techniques[.]"   *Id*. at ¶¶ 64(j), (k),

(l).[6]   Among other things, these allegations provide no basis, plausible or

otherwise, to find that the City acted with deliberate indifference with respect to

the purported failures.   *See City of Canton*, 489 U.S. at 389 ("Only where a failure

to train reflects a 'deliberate' or 'conscious' choice by a municipality…can a city

be liable for such a failure under § 1983.").   Simply put, there are no allegations

that the City took any deliberate or conscious action in this regard.   Moreover, as

already discussed, none of the purported examples of misconduct in the FAC are in

any way relevant to this case.   *See Connick v. Thompson*, 563 U.S. 51, 62-63

(2011) (holding that deliberate indifference was not shown by a pattern of similar

constitutional violations because the identified violations were "not similar to the

violation at issue here," and thus, "they could not have put [the defendant] on

notice that specific training was necessary to avoid this constitutional violation.").

Further, there are no allegations that the alleged inadequacies in the City's training

were so "patently obvious" so as to subject the City to liability.   *See id*. at 64

(explaining that, when there is no pre-existing pattern of constitutional violations, a

---

[6]The FAC's reference to "arm hold techniques" is another example of how many of the allegations therein appear to have been copied from a complaint in a different case.   The alleged incident here has nothing to do with "arm hold techniques."

municipality can be liable for a failure to train only when the unconstitutional consequences of failing to do so are "patently obvious").[78]

Next, the FAC alleges that the City condoned and encouraged litigation for the purpose of "insulating" its employees, a "conspiracy of silence" in order to conceal wrongdoing, the use of excessive force, and an "atmosphere of lawlessness…."   FAC at ¶¶ 64(m), (n), (o), (p).   No factual allegations, however, are provided regarding the activities the City purportedly encouraged, such as when these activities began, how often they occurred, or for what wrongdoing the alleged encouragement was provided.   As such, no allegation is made related to whether these purported customs are "so permanent and well settled" as to constitute a custom of the City.   Nor is it even clear if the allegations are relevant to this case.   Plaintiff appears to believe in the power of hyperbole, when the power of facts would be far more useful.

Next, the FAC alleges that the City created a training committee and a use-of-force board to review incidents involving death or serious bodily injury, but not

_____

[7]The Court notes that Plaintiff's response to the motion to dismiss does nothing to cure the deficiencies in the FAC in this regard.   Instead, the response simply regurgitates the relevant paragraphs of the FAC and then states that there was deliberate indifference.   *See* Dkt. No. 40 at 7-11.   No explanation, however, is provided as to *why* any of the regurgitated paragraphs are relevant to the deliberate-indifference analysis.

[8]In addition, the allegations regarding failures to train appear to be undercut by other allegations in the FAC.   Notably, the FAC alleges that the Officer Defendants "receiv[ed] training that [was] designed to prevent the conduct described in [the FAC]…."   FAC at ¶ 73.

incidents involving racial animus, profiling, discrimination, dishonesty, or "misconduct[.]"  FAC at ¶¶ 75-76.  The FAC alleges that, as a result, the review of incidents involving the City's officers is not "meaningful[.]"  *Id*.  Once again, the relevance of these allegations to the facts of this case is unclear.  This case involves a death, and thus, it would have been reviewed based upon the FAC's allegations.  It is, therefore, entirely unclear why a policy of reviewing incidents involving death would have caused the Officer Defendants to then commit the incident that would be reviewed.  Moreover, there are no allegations that this case involves any of the examples of misconduct alleged in the FAC, such as racial profiling or dishonesty.[9]

The only remaining issue, with respect to all of the foregoing alleged customs and failures to train, is whether leave to amend should be granted.  The Court finds that it should not because amendment would be futile.  As discussed,

---

[9]The FAC also alleges that the incident resulting in Sanchez's death took place while the former Chief of Police, a former deputy prosecutor, and various police officers engaged in the obstruction of justice.  FAC at ¶¶ 66-69.  No allegation is made in those paragraphs, however, as to why any of the same are relevant to this case.  Later in the FAC, it is alleged that the Officer Defendants were "aware that any excessive use of force would be overlooked and/or excused" by the Chief of Police and the deputy prosecutor.  *Id*. at ¶ 81.  To the extent these allegations are meant to be connected–*i.e.*, when Sanchez died, there was a custom of overlooking the use of excessive force–no such connection is alleged.  Particularly, there is no allegation that the obstruction of justice committed by the former Chief of Police and the former deputy prosecutor had anything to do with the use of excessive force by *any* police officers, let alone the Officer Defendants.  As such, the Court rejects the foregoing as a longstanding custom actionable under *Monell*.

many of the customs and failures to train are generic allegations that could be

asserted against any municipality.   As for customs and failures to train that are

specific to the City and/or the Honolulu Police Department, none of them are

remotely relevant to the alleged incident during which Sanchez was killed.

Amendment cannot cure these deficiencies.   For example, amendment cannot

cure the fact that none of the alleged exemplars of unconstitutional conduct are

relevant to this case.[10]   Moreover, the FAC is not Plaintiff's first opportunity to

correct her *Monell* allegations.   Notably, in a motion to dismiss the original

complaint, Defendants made similar arguments to the ones they make now

regarding the deficiencies in Plaintiff's *Monell* allegations.   *See* Dkt. No. 12-1 at

6-8.   None of those deficiencies have been ameliorated in the FAC, and nothing

therein or in the response to the motion to dismiss suggests that they can be.   *See*

*William O. Gilley Enterprises, Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 669 n.8 (9th

Cir. 2009) (explaining that, even if the plaintiff could, "in the abstract," amend his

complaint to state a claim, "his repeated failure to do just that suggests that it

would be futile to offer him another chance to do so."); *Zody v. Microsoft Corp.*,

2013 WL 2468250, at *5 n.4 (N.D. Cal. June 7, 2013) (dismissing a counterclaim

without leave to amend because, although the defendant had the opportunity to

---

[10]Similarly, nothing can cure the fact that the Torrance Police Department is not (and will not be) a defendant in this case.

allege facts in support of the claim, the defendant "did not do so *despite* the fact that [the plaintiff] filed a motion to dismiss the previous counterclaim based on reasons also raised in the pending motion.") (emphasis in original).   As a result, the motion to dismiss is granted without leave to amend to the extent the *Monell* claim is premised on a custom or failure to train by the City.

With no further bases for a *Monell* claim alleged in the FAC (or asserted in the response to the motion to dismiss), Claim Five is, therefore, dismissed in full.

## II.   <u>Claim Three</u>

Defendants argue that Claim Three should be dismissed because it is duplicative of Claim Two, which is Plaintiff's Fourth Amendment claim for excessive force against Sanchez.   Although acknowledging that Claim Three is brought on behalf of herself *and* Sanchez, Plaintiff nonetheless asserts that Claim Three was only intended to be brought on behalf of herself.   Dkt. No. 40 at 12-13. Plaintiff, in other words, asserts that Claim Three was "inadvertently" brought on behalf of Sanchez.   *Id*. at 13.

Because Claim Three is clearly brought on behalf of both Plaintiff and Sanchez, the latter of which Plaintiff acknowledges would duplicate Claim Two, the motion to dismiss is granted as to Claim Three to the extent the claim is

brought on behalf of Sanchez.   The motion to dismiss is moot with respect to

Claim Three in all other respects.[11]

## III.   Punitive Damages

Defendants argue that Plaintiff's request for punitive damages should be

dismissed to the extent it is made against the City.   In response, Plaintiff asserts

that, in the FAC, she only intended to seek punitive damages with respect to the

Officer Defendants in their individual capacities, not the City.   Dkt. No. 40 at 13-

14.   Since Plaintiff clarifies that she only seeks punitive damages against the

Officer Defendants in their individual capacities, the Court finds Defendants

arguments in this regard moot.   Specifically, going forward, the FAC may only be

construed as seeking punitive damages against the Officer Defendants in their

individual capacities.

## IV.   Officer Defendants in Their Official Capacities

Defendants argue that the Officer Defendants in their official capacities

should be dismissed from this action because the City is named as a defendant in

this case and the City is the party in interest with respect to those claims.   In

response, Plaintiff argues that the Officer Defendants in their official capacities

---

[11]The Court declines to require Plaintiff to file another amended complaint to correct this "inadverten[ce]," as doing so will merely waste time.   The Court will bind Plaintiff to each of her clarifications set forth herein.

should not be dismissed because the City is not named as a defendant with respect to the relevant claims.   Dkt. No. 40 at 14.   Instead, the City is only named as a defendant with respect to the *Monell* claim.   *Id.*

The Court agrees with Defendants that Plaintiff has misconstrued the law in this regard.   Contrary to Plaintiff's apparent, yet unsupported, contention, the issue is not whether a specific claim *names* an entity, like the City, as a defendant to that specific claim.   Rather, the issue is, simply, whether a claim is asserted against an officer in his official or individual capacity.   *See, e.g.*, *Pistor v. Garcia*, 791 F.3d 1104, 1112 (9th Cir. 2015) ("As a general matter, individual or 'personal capacity suits seek to impose personal liability upon a government official for wrongful actions he takes under color of law,' and that were taken in the course of his official duties.   By contrast, official capacity suits ultimately seek to hold the entity of which the officer is an agent liable, rather than the official himself: they 'generally represent merely another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Kentucky v. Graham*, 473 U.S 159, 165-166 (1985)) (citations, ellipsis, and internal quotation marks omitted).[12]   Here, it is undisputed that the relevant claims are asserted, in part, against the Officer

---

[12]As such, even if the City had not been named as a defendant, as it was here, it would have been proper, upon request, for the City to substitute itself as the defendant for any official-capacity claim.   *Luke v. Abbott*, 954 F. Supp. 202, 204 (C.D. Cal. 1997).

Defendants in their official capacities.   Therefore, the City, not the Officer

Defendants, is the proper defendant for the official capacity claims.   As a result,

the motion to dismiss is granted to the extent that the Officer Defendants, in their

official capacities only, are dismissed from this case.

**<u>CONCLUSION</u>**

For the reasons stated herein, the motion to dismiss, Dkt. No. 38, is

GRANTED IN PART and DENIED AS MOOT IN PART.   Claim Five and the

Officer Defendants in their official capacities only are dismissed without leave to

amend.   Claim Three and the request for punitive damages are clarified to the

extent set forth herein.

IT IS SO ORDERED.

Dated: November 12, 2019 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*IRIS SANCHEZ, individually, and as successor in interest to Pekelo Sanchez,*
*deceased v. City & County of Honolulu, et al*; Civil No. 19-00072 DKW-WRP;
**ORDER GRANTING IN PART AND DENYING AS MOOT IN PART**
**DEFENDANTS' MOTION TO DISMISS**